**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

**502 CORTLAND ROAD, LLC,**
73 Railroad Ave.
Spencer, NY 14883

Plaintiff,

**v.**

**ALPINA INVESTMENTS, INC.**
1710-1177 West Hastings St.
Vancouver, B.C., Canada V6E 2L3

**and**

**TIMBER CREEK REINSURANCE, INC.**
301 Louisiana Avenue
Bogalusa, Louisiana 70427

Defendants.

**COMPLAINT**

Case No. **3:24-cv-1018 (DNH/ML)**

**Jury Trial Demanded**

Plaintiff 502 Cortland Road, LLC ("Plaintiff"), by and through its undersigned counsel, brings this action sounding in violations of state contract and tort law and for its Complaint states as follows:

## PARTIES

1. Plaintiff is a New York limited liability company with a principal place of business at the above-captioned address.

2. Defendant Alpina Investments, Inc. ("Alpina") is a private lender domiciled in the Country of Canada, with a principal place of business at the above captioned address.

3. Defendant Timber Creek Reinsurance, Inc. ("Timber Creek") is a reinsurance and insurance company domiciled in the state of Louisiana with its principal place of business at the

above-captioned address. Unless otherwise noted, Defendants Alpina and Timber Creek are collectively referred to as "Defendants" below.

## JURISDICTION

4. This Court has federal jurisdiction over the parties and claims asserted herein pursuant to 28 U.S.C. § 1332(a)(2) and (c) because the amount in controversy is over $75,000, the parties are residents of different States and foreign states, and Alpina is incorporated and has its principal place of business in a foreign state. This Court also has federal question subject matter jurisdiction pursuant to 18 U.S.C. § 1331 and 18 U.S.C. § 1964 (a) and (c). Plaintiff alleges that Defendants conducted multiple racketeering activities that had a continuity of structure and purpose over an extended period of time. RICO provides federal jurisdiction for persons "injured in [their] business or property" by acts taken pursuant to a racketeering "enterprise." 18 U.S.C. § 1964 (c). Alpina may be served with this action pursuant to Rule 4(k) of the Federal Rules of Civil Procedure and/or the requirements of the Hague Convention.

5. This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as the state claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events that underlie this action and the damages Plaintiff has sustained took place within this judicial district in Tioga County, New York. Further, not only do Defendants transact substantial business in New York State, the causes of action asserted herein arise directly out of Defendants' tortious acts both within and outside New York, which caused injuries to persons and

properties within New York. Additionally, the primary agreement upon which this suit in part arises specifically provides for venue in the State of New York as well as subject matter and personal jurisdiction in the State of New York. Venue is also proper in this Court pursuant to 18 U.S.C. § 1965.

## GENERAL ALLEGATIONS

7. Plaintiff is a company owned in entirety by High End Group, LLC, which is owned by High End Holdings, LLC. Plaintiff intends to transform a 17-acre property into an innovative and energy-efficient agricultural facility for lease. To accomplish this goal, Plaintiff sought $5 million funding, in consideration of which, $1 million would be invested as capital by its parent company, High End Group, LLC, as a bridge loan.

8. Plaintiff and Alpina (the "Parties") are signatories to a Private Debt Financing & Investment Master Agreement dated August 8, 2023 (the "Financing Agreement"), attached hereto as Exhibit 1. The Financing Agreement is a binding contract between the Parties.

9. Pursuant to the Financing Agreement, Plaintiff agreed to deposit the amount of One Million Dollars ($1,000,000.00) ("Escrow Deposit") into an established escrow account belonging to John J. McManus & Associates, P.C. as a condition precedent to receiving Five Million Dollars ($5,000,000.00) from Alpina (the "Loan").

10. Pursuant to the Financing Agreement, the Escrow Deposit was to trigger Alpina's obligation to fund the Loan by October 9th, 2023. Thereafter, and provided Alpina funded the Loan pursuant to the Financing Agreement, the Escrow Deposit was to be released to Alpina.

11. Plaintiff fulfilled its contractual obligations to Alpina by making the requisite Escrow Deposit into the IOLTA account of the Law Firm of John J. McManus & Associates, P.C. (the "McManus firm") via a wire transfer.

12. In return for Plaintiff's payment of the Escrow Deposit, Alpina was to lend to Plaintiff the amount of Five Million U.S. Dollars ($5,000,000.00) – the Loan – in accordance with a mutually agreed upon Funding Schedule, set forth in Section 2 of the Financing Agreement, with repayment based upon a Ten (10) year amortization with an annual rate of interest of 4.99%, which was to begin to accrue twelve (12) months following Alpina's payment of the initial tranche of loan financing to Plaintiff.

13. Specifically, pursuant to the Financing Agreement, following Plaintiff's Escrow Deposit, Alpina was to deposit an "Initial Draw" payment of Three Million U.S. Dollars ($3,000,000.00) into the account of Plaintiff. Alpina was further obligated to deposit into Plaintiff's account a "New Build Extension" payment in the amount of One Million U.S. Dollars ($1,000,000.00) on November 30, 2023. Finally, Alpina was obligated to deposit into Plaintiff's account a payment for a "New Build Extension and Equipment" in the amount of One Million U.S. Dollars ($1,000,000.00) on December 30, 2023.

14. Alpina expressly acknowledged in the Financing Agreement the importance of timely payments to Borrower and agreed to the "Funding Schedule" above, beginning on or about October 9, 2023.

15. Alpina represented in the Financing Agreement that it had full right, power, and authority to execute, deliver, and perform its obligations under this Financing Agreement without the consent or approval of any third party. The Financing Agreement specifically states that it

constitutes Alpina's legal, valid, and binding obligation and is enforceable against Alpina in accordance with its terms.

16. Pursuant to the Financing Agreement, should Alpina default or fail to complete the transaction of funding the Initial Draw payment of the Loan to Plaintiff for any reason, Alpina was to immediately pay One Million United States Dollars ($1,000,000.00) to Plaintiff, in its entirety and totality, without any delay, assessment of fees, or any other encumbrance to Plaintiff.

17. Alpina's failure for any reason to fund the amounts contemplated in Agreement and within the timeframe set forth in the Funding Schedule, not to exceed 60 days from the execution of this Agreement, was to immediately trigger the payment by Alpina to Plaintiff of One Million U.S. Dollars ($1,000,000.00) without deduction or delay.

18. Pursuant to the Agreement, it shall be considered a material breach in the event that Defendant failed to complete a bank transfer to Plaintiff, pursuant to the Funding Schedule set forth in Section 2 of the Agreement. Such an event (an "Event of Default") will be considered a breach if it occurred and continued past the permitted cure period.

19. Pursuant to the Agreement, Alpina acknowledged that Plaintiff was relying on the funding set forth in the Funding Schedule in Section 2 of this Agreement to fulfill its corporate mission, obligations, and obligations subject to this Agreement.

20. It shall be considered a material breach of the Financing Agreement in the event that Alpina fails to complete a bank transfer to Plaintiff, pursuant to the Funding Schedule set forth in Section 2 of the Financing Agreement.

21. The Parties agreed in the Financing Agreement that the state and federal courts in New York in the United States, or the equivalent courts in the Province of British Columbia in

Canada, shall be the appropriate jurisdiction, venue, and forum for their lawsuits, and the Parties waived all objections to jurisdiction, venue, and forum.

22. In the event that any party institutes any action or suit to enforce the Financing Agreement or to secure relief from any default thereunder or breach thereof, the prevailing party shall be entitled to recover all of its costs and expenses, including reasonable attorney's fees, incurred in connection therewith and in enforcing or collecting any judgment rendered therein.

23. As noted above, Plaintiff performed its obligations under the Financing Agreement. Plaintiff deposited the escrow funds into the McManus firm's IOLTA account. Alpina directed Plaintiff to deposit the escrow funds into the McManus firm's IOLTA account. Upon information and belief, the McManus firm and Mr. McManus were co-conspirators, in that Mr. McManus furthered Defendants' interests with the intention of harming Plaintiff and depriving Plaintiff of the benefit of its bargain with Alpina.

24. Alpina breached the explicit and material terms of the Financing Agreement by failing to complete the transaction of funding the first tranche (Initial Draw) of the Loan to Plaintiff within sixty days of the date of the Financing Agreement. Alpina further breached the explicit and material terms of the Financing Agreement by failing to complete the transaction of funding *any* of the required payments/draws to Plaintiff at any time. Alpina further breached the Agreement by causing the escrow funds to be transferred to a different account of a different escrow agent.

25. Under the Financing Agreement, "Should Lender default or fail to complete the transaction of funding the first tranche of the Loan to Borrower for any reason (the "Initial Draw"), as set forth in Exhibit A, Lender shall immediately pay One Million United States Dollars to the Borrower, in its entirety and totality, without the assessment of fees, or any other encumbrance to the Borrower."

26. Alpina did not immediately pay, and still has not paid, Plaintiff $1,000,000.00 as required by the Financing Agreement.

27. The terms of the Financing Agreements also obligated Alpina to comply with U.S. law governing fraud and criminal acts, and New York was the selected forum and U.S. law the choice of law in that chosen forum for all disputes related to the Agreements. The Parties consented to this choice of law and choice of forum in signing the Agreements. Alpina violated both U.S. and New York law governing fraud and criminal acts through its actions noted above and below.

28. Although Plaintiff attempted to recoup its losses by making a claim with Timber Creek Reinsurance under a Performance Indemnity Insurance Policy (the "Insurance Policy"), attached hereto as Exhibit 2, that insured Alpina for the benefit of Plaintiff, Plaintiff was unable to recoup those losses because of Alpina's actions and inactions with regard to Timber Creek. Specifically, Timber Creek agreed to indemnify the contractual counterparties of Alpina (*i.e.*, Plaintiff) in respect of Alpina's failure to make satisfactory payment(s) as due under the Financing Agreement.

29. After Plaintiff made its claim with Timber Creek, Alpina failed to provide sufficient documentation to Timber Creek to confirm the security asset held in its custody for the purposes of funding the Financing Agreement between Alpina and Plaintiff. Further, Alpina falsely stated in a May 7, 2024 email to Timber Creek that Alpina was currently facing a force majeure situation which triggered a non-performance exclusion in the Insurance Policy for Alpina to maintain its normal professional workings.

30. On information and belief, Alpina was not facing, and has not faced, a "force majeure" situation and its representations to the contrary to Timber Creek were intentionally false and were the direct cause of Plaintiff's inability to recoup its losses through the Insurance Policy.

31. Timber Creek subsequently represented to state insurance investigators that benefits not were payable to Plaintiff under the Insurance Policy because Alpina had cancelled the policy. This was not the reason provided to Plaintiff by Timber Creek and is both fraudulent and ill-conceived.

32. On information and belief, Alpina and Timber Creek's fraudulent and illegal activities have not been limited to its dealings with Plaintiff. Defendants' pattern of conduct is subject to a civil complaint from other New York State residents and business entities. *See, e.g.*, *Gold Property Partners, LLC v. Alpina Investments, Inc.*, Index No. 602705/2024, pending in the Supreme Court of the State of New York, Nassau County, in which it has been alleged/asserted that Alpina and Timber Creek fraudulently entered into a similar loan agreement with another New York corporate entity and breached its obligations both under that loan agreement and a settlement agreement between the parties through a course of conduct similar to its conduct in the instant case, including using the same escrow agent (John McManus) as a co-conspirator in both cases. This demonstrates a consistent pattern of fraudulent and illegal activities that are violative of both state and federal law.

**COUNT I**
**RICO – 18 U.S.C. § 1961 et seq.**
**(Against Alpina and Timber Creek)**

33. Plaintiff incorporates and re-alleges herein the allegations set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

34. Defendants voluntarily and intentionally devised or participated in a scheme to defraud another, Plaintiff, out of money.

35. Defendants did so with the intent to defraud.

36. It was reasonably foreseeable that interstate wire communications would be used to further Defendant's fraudulent scheme.

37. Interstate wire communications were in fact used by Defendants to accomplish their fraudulent scheme vis-à-vis Plaintiff. Defendants' communications with Plaintiff were both through e-mail and telephone – i.e., they were electronic wire transmissions. Defendants' communications were made with the intent to defraud Plaintiff out of $1,000,000.00 and Defendants at all times relevant hereto acted with knowledge of their fraudulent communications being sent.

38. Wire fraud is a federal crime that carries a sentence of up to 20 years' imprisonment and fines of up to $250,000 for individuals and $500,000 for organizations.

39. A person need not have actually defrauded someone or personally sent a fraudulent communication to be convicted of wire fraud. It is sufficient to prove the intent to defraud or acting with knowledge of fraudulent communications being sent.

40. At all times relevant to this action, Defendants were part of an association-in-fact enterprise (hereinafter the "Enterprise" or the "Racketeering Enterprise") within the meaning of 18 U.S.C.A. § 1961(4), and said Enterprise engaged in activities which have an impact on interstate commerce.

41. The Racketeering Enterprise at all relative times possessed and continues to possess an ongoing organizational structure with sufficient continuity to carry out the intended purposes of the Enterprise.

42. Defendants and the Enterprise had a common purpose, which Defendants carried out through the Enterprise, which was to use interstate and international wire communications to defraud New York State investors into depositing funds into Defendants' accounts.

43. At all times relevant to this action, Defendants were associated with the Enterprise and, at the same time, were engaged in other activities which were separate and distinct from the Enterprise. These legitimate business interests enabled Defendants to operate under the cover of legitimacy when engaging in racketeering activities through the Racketeering Enterprise.

44. Continuity is demonstrated by the predicate acts alleged above, in that pattern of racketeering involved multiple predicate acts that have taken place, thus establishing both relatedness and continuity. These predicate acts illustrate a threat of continued racketeering activity and evince that the predicate acts constitute the regular manner that Defendants conduct certain aspects of their business.

45. As a direct result of Defendants' unlawful racketeering acts and violation of 18 U.S.C. § 1962(c), Plaintiff has been injured in its business or property and is entitled to recover treble damages and attorneys' fees under 18 U.S.C. § 1964(c).

46. The damages suffered by Plaintiff were reasonably foreseeable, and, in fact, anticipated and intended by Defendants as the natural consequence of their acts.

**COUNT II**
**RICO Conspiracy**
**(Against Alpina and Timber Creek)**

47. Plaintiff incorporates and realleges the foregoing allegations of this Second Amended Complaint as though fully set forth herein.

48. At all relevant times Defendants were "persons" within the meaning of RICO, 18 U.S.C. §§ 1961(3) and 1964(c).

49. At all relevant times, Defendants controlled the Racketeering Enterprise and engaged in racketeering activities for the purpose stealing from Plaintiff and similar organizations and individuals and destroying the business of Plaintiff and others.

50. At all relevant times, the Racketeering Enterprise was engaged in, and its activities affected, interstate commerce, within the meaning of RICO, 18 U.S.C. § 1962(c). Defendants controlled the Racketeering Enterprise, and Defendants and their co-conspirators conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs through a "pattern of racketeering activity" within the meaning of RICO, 18 U.S.C. §1961(5), in violation of RICO, 18 U.S.C. § 1962(c).

51. At all relevant times, Defendants and the co-conspirators each were associated with the Enterprise and agreed and conspired to violate 18 U.S.C. § 1962(c), i.e., each agreed to conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d).

52. Defendants and the other co-conspirators committed and/or caused to be committed a series of overt acts in furtherance of the Conspiracy and to affect the objects thereof, including but not limited to the acts set forth above.

53. As a result of the Defendants' and their co-conspirators' mail and wire fraud and other unlawful acts, Plaintiff was directly and proximately injured in its business or property by the predicate acts engaged in by the Defendants and their co-conspirators.

54. As a result of Defendants' and the other co-conspirators' violations of 18 U.S.C. § 1962(c), Plaintiff was damaged in an amount to be determined at trial.

55. As a result of the RICO Conspiracy, Defendants and their co-conspirators are liable to the Plaintiff for its losses in an amount to be determined at trial.

56. Pursuant to RICO, 18 U.S.C. § 1964(c), the Plaintiff is entitled to recover threefold its damages plus costs and attorneys' fees from Defendants.

**COUNT III**
**Breach of Contract**
**(Against Alpina)**

57. Plaintiff incorporates and re-alleges the allegations set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

58. The Financing Agreement is a valid, enforceable contract between Plaintiff and Alpina.

59. Plaintiff performed its obligations under the Financing Agreement.

60. Alpina breached the Financing Agreement.

61. Plaintiffs had a reasonable expectation that Alpina would satisfy its express obligations under the Financing Agreement.

62. Alpina's actions above amount to a violation of its obligations under the Financing Agreement and a violation of Plaintiffs' contractual rights under the Financing Agreement.

63. Plaintiff has been damaged by Alpina's breach of its obligations under the Financing Agreement, which damage was proximately caused by Alpina's actions and failures to act in compliance with its contractual obligations.

**COUNT IV**
**Breach of Contract**
**(Against Timber Creek)**

64. Plaintiff incorporates and re-alleges the allegations set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

65. The Insurance Policy is a valid, enforceable contract between Alpina and Timber Creek.

66. Plaintiff is a beneficiary of that contract and is in privity with the parties to that contract.

67. Plaintiff performed its obligations under that contract.

68. Timber Creek breached the Insurance Policy.

69. Plaintiff had a reasonable expectation that Timber Creek would satisfy its express obligations under the Insurance Policy.

70. Timber Creek's actions above amount to a violation of its obligations under the Insurance Policy and a violation of Plaintiff's contractual rights under that contract.

71. Plaintiff has been damaged by Timber Creek's breach of its obligations under the Insurance Policy, which damage was proximately caused by Timber Creek's actions and failures to act in compliance with its contractual obligations.

**COUNT V**
**Unjust Enrichment**
**(Against Alpina)**

72. Plaintiff incorporates and re-alleges the allegations set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

73. Alpina was enriched by Plaintiff's fulfillment of its obligations under the Financing Agreement.

74. Alpina was enriched at Plaintiff's expense.

75. It is against equity and good conscience to permit Alpina to retain what Plaintiff is seeking to recover in this action.

76. As a result of their contractual relationship, the Plaintiff and Alpina are in privity to each other.

77. There was a sufficiently close relationship between the parties that caused Plaintiff's reliance on Alpina's representations and warranties in connection with the Financing Agreement and the express terms of that agreement.

78. There was a sufficiently close relationship between the parties that induced Plaintiff to enter into, and satisfy its obligations under, the Financing Agreement.

79. Plaintiff has been damaged by Alpina's breach of its obligations under the Financing Agreement, which damage was proximately caused by Alpina's actions and failures to act in compliance with its contractual obligations.

**COUNT VI**
**Fraud / Fraudulent Misrepresentation**
**(Against Alpina and Timber Creek)**

80. Plaintiff incorporates and re-alleges the allegations set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

81. Defendants knowingly and intentionally made material misrepresentations of existing facts, with knowledge of their falsity, with the intent to induce Plaintiff's reliance thereon.

82. Defendants knew, or should have known, that the representations made to the Plaintiff about the Funds and Insurance Policy would be reasonably relied upon by Plaintiff.

83. Material portions of those representations and information were false, wrong, and inaccurate, and Defendants knew that those representations and information were false, wrong, and inaccurate (the "Misrepresentations").

84. Defendants fraudulently made the Misrepresentations intending that the Plaintiff would act on the Misrepresentations and knowing that Plaintiff was likely to rely on the Misrepresentations which, if erroneous, would cause loss or injury.

85. The content of the Misrepresentations includes, but is not limited to, the following: (a) misrepresenting and/or failing to disclose the escrow agent with which Alpina would deposit the investment funds from Plaintiff; (b) misrepresenting and/or failing to disclose disagreement with the source of funding used for Plaintiff's investment; (c) misrepresenting and/or failing to

disclose to Plaintiff that Alpina would not, and never intended to, return funds invested by Plaintiff upon Defendant's default of the Funding Agreement; and (d) misrepresenting and/or failing to disclose that Timber Creek would not, and never intended to, pay any benefits to Plaintiff under the Insurance Policy.

86. Plaintiff did in fact rely on those Misrepresentations and Plaintiff's reliance on those Misrepresentations was reasonable and foreseeable.

87. Defendants made those misrepresentations with the malicious intent to defraud and deceive Plaintiff, and to induce Plaintiff's reliance on the Misrepresentations to Plaintiff's injury, harm, loss, and detriment, and Plaintiff was in fact misled and deceived by the Misrepresentations, and in fact reasonably relied on the Misrepresentations.

88. The Misrepresentations were false and fraudulent and were known by Defendants to be false and fraudulent when made, and thereafter, were made with reckless indifference in disregard for the truth or falsity of the Misrepresentations, displaying a high degree of moral culpability and manifesting a conscious and reckless disregard for the rights of Plaintiff bordering on criminality.

89. Defendants had actual knowledge as to the Misrepresentations. Defendants had a duty to disclose this material information to Plaintiff and failed to do so.

90. As a direct, proximate, and foreseeable consequence of Plaintiff's reliance on the Misrepresentations Plaintiff has sustained damages in excess of $1 million, the exact amount to be proven at trial.

91. Plaintiff seeks special damages caused by the Misrepresentations and unrecoverable as contract damages, including any damages connected to losses Plaintiff has and

will sustain as a result of Defendants' actions as relates to Plaintiff's contracts and business relationships with Timber Creek and other entities.

**COUNT VII**
**Breach of Covenant of Good Faith and Fair Dealing**
**(Against Alpina and Timber Creek)**

92. Plaintiff incorporates and re-alleges the allegations set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

93. The Financing Agreement and Insurance Policy are valid, enforceable contracts between Plaintiff and Defendants.

94. There was an implied duty of good faith in the performance of the Financing Agreement and Insurance Policy. The implied covenant of good faith and fair dealing was a pledge that no party to the agreements shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruit of the contract, even if the terms of the agreements do not explicitly prohibit such conduct.

95. Plaintiff had a reasonable expectation that Defendants would satisfy their express obligations under the Financing Agreement and Insurance Policy.

96. Defendants' actions and inactions above amount to a violation of the implied covenant of good faith and fair dealing in connection with the Financing Agreement and Insurance Policy.

97. Plaintiff has been damaged by Defendant's breach of the implied covenant of good faith and fair dealing.

**COUNT VIII**
**Intentional Interference with Contract**
**(Against Alpina)**

98. Plaintiff incorporates and re-alleges the allegations set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

99. Plaintiff was a beneficiary of the aforementioned Insurance Policy between Timber Creek and Alpina.

100. The Insurance Policy was a valid and enforceable contract.

101. Alpina knew of the existence of the Insurance Policy.

102. Alpina's actions and inactions above amount to intentional interference with respect to Plaintiff's rights under the Insurance Policy.

103. Plaintiff has been damaged by Alpina's knowledge of and interference in that Alpina has caused and directed Timber Creek not to pay Plaintiff any benefits under the Insurance Policy.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendants and award damages as follows:

a. Judgment in favor of Plaintiff;

b. An award of treble damages on Count I (Civil RICO);

c. An award of treble damages on Count II (Civil RICO);

d. An award of compensatory damages on Counts III through VIII, in an amount of not less than $1 million;

e. An award of punitive damages as to Plaintiff's claims sounding in tort;

f. An award of attorneys' fees and costs;

g. An award of pre- and post-judgment interest; and

g. Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff respectfully requests a jury trial in this matter.

Dated: August 19, 2024

Respectfully submitted,

**MACKENZIE HUGHES LLP**

By: ____________________

John M. Nichols, Esq., Bar #515031
440 S. Warren St., Suite 400
Syracuse, NY 13202
(T) (315) 474-7571
(F) (315) 474-6409
(E) jnichols@mackenziehughes.com
www.mackenziehughes.com

and

**HOLON LAW PARTNERS LLP**

Jason H. Ehrenberg, Esq.[1]
442 5th Ave. Suite 2697
New York, NY 10018
(T) 332-253-4992
(E) jehrenberg@holonlaw.com
www.holonlaw.com

[1] Pro hac vice application to be submitted.