**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

502 CORTLAND ROAD, LLC,

                         Plaintiff,           3:24-cv-1018
                                                (ECC/ML)

v.

ALPINA INVESTMENTS, INC., et al.,

                         Defendants.

---

Jason H. Ehrenberg, Esq., *for Plaintiff*
Scott Iseman, Esq., *for Defendants Neyland, Kirkland, and Timber Creek Reinsurance, Inc.*
Thomas G. Rantas, Esq., *for Defendants McManus and John J. McManus & Associates, P.C.*
Seth Eschen, *Defendant, Pro Se*

**Hon. Elizabeth C. Coombe, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

Plaintiff 502 Cortland Road, LLC brought this action against eight defendants including Timber Creek Reinsurance, Inc. (Timber Creek), Dennis Neyland, and Anthony Lynn-Kirkland (collectively, the Insurance Defendants), alleging claims under the civil remedies portion of the Racketeering Influenced Corrupt Organizations Act (RICO), 18 U.S.C. § 1964(c), and New York contract and tort law. *See generally* Amended Complaint (Am. Compl.), Dkt. No. 15. Presently before the Court is the Insurance Defendants' motion to dismiss Plaintiff's Amended Complaint, or in the alternative, compel arbitration. Dkt. No. 37. The motion is briefed. Dkt. Nos. 37-1, 44. For the following reasons, Defendants' motion is granted to the extent that it seeks to compel arbitration.

I.      FACTS[1]

Plaintiff is a "New York limited liability company" with a principal place of business in New York. Am. Compl. ¶ 1. Timber Creek, a reinsurance and insurance company, is domiciled in Louisiana, and its principal place of business is in Louisiana. *Id.* at ¶ 3. Neyland is Timber Creek's chief executive officer and is also domiciled Louisiana. *Id.* at ¶ 6. Kirkland is the "Director of Operations" for Tiger Paw Family, LLC, and was domiciled in Georgia. *Id.* at ¶ 8.

Plaintiff "intends to transform a 17-acre property into an innovative and energy-efficient agricultural facility for lease." Am. Compl. ¶ 13. "To accomplish this goal, Plaintiff sought $5 million funding, in consideration of which, $1 million would be invested as capital by its parent company . . . as a bridge loan." *Id.* at ¶ 13. On August 8, 2023, Plaintiff signed a financing agreement with Alpina Investments, Inc. (Alpina Investments), a private lender domiciled in Canada with its principal place of business there. *Id.* at ¶¶ 2, 17. On August 3, 2023, a representative for Alpina Investments emailed Plaintiff stating that Alpina Investments would "engag[e] Timber Creek to provide an insurance policy for the benefit of Plaintiff." *Id.* at ¶ 36(b). On August 11, 2023, Neyland signed an insurance policy on behalf of Timber Creek, "for the benefit of Plaintiff," promising to indemnify Plaintiff if Alpina Investments did not make payments due under the financing agreement. *Id.* at ¶ 36(e); *see* Exhibit 2 (Insurance Policy) at ¶ 1C, Dkt. No. 15-2. This insurance policy included an arbitration clause. Insurance Policy ¶ 31. The arbitration clause states, in relevant part:

> As a condition precedent to any right of action hereunder, any dispute arising out of or relating to the interpretation, performance or breach of this Contract, as well as the formation and/or validity thereof, will be referred to arbitration under ARIAS

---

[1] These facts are drawn from the parties' submissions and taken in the light most favorable to Plaintiff. *Keyes v. Ayco Co., L.P.*, No. 1:17-cv-955 (BKS/DJS), 2018 WL 6674292, at *1 n.1 (N.D.N.Y. Dec. 19, 2018). Unless otherwise noted, citations to page numbers refer to pagination generated by ECF system.

>Arbitration Rules by a panel of three arbitrators. Either party may request arbitration in writing sent to the other party (the respondent) by certified or registered mail, return receipt requested.

*Id.* at ¶ 31(1).

Pursuant to the financing agreement, Plaintiff deposited $1 million into an escrow account. Am. Compl. at ¶¶ 20, 22. In return, the financing agreement required Alpina Investments to lend Plaintiff $5 million on a funding schedule. *Id.* at ¶ 23. Alpina Investments did not, however, pay Plaintiff. *Id.* at ¶ 37. On December 4, 2023, Kirkland, "a liaison for . . . Timber Creek," informed Plaintiff that the escrow account had been frozen. *Id.* at ¶ 36(h). By that point, Plaintiff's $1 million in escrow had been released or transferred to an account maintained by an attorney for Alpina Investments, who then "wired the money overseas." *Id.* The next day, a representative for Alpina Investments emailed Plaintiff, "alleging that Plaintiff" had breached the financing agreement and "representing" that Plaintiff's collateral would be returned "within a matter of days." *Id.* at ¶ 36(i). Kirkland emailed Plaintiff "regarding the same issue on the same day." *Id.* Kirkland and the escrow account owner "regularly email[ed], text[ed], and communicate[d] with Plaintiff about these issues and the purported return of Plaintiff's "investment" throughout the winter of 2023 and the spring of 2024." *Id.*

On December 18, 2023, Neyland notified Plaintiff by email that the insurance policy "had been 'canceled from inception'" and that "all premiums, fees, taxes, and expenses" that had been earned by Timber Creek "would not be returned." Am. Compl. ¶ 36(j). On February 19, 2024, Plaintiff filed a claim with Timber Creek under the insurance policy. *Id.* at ¶¶ 36(l), 41. On March 14, 2024, a representative from Timber Creek emailed Plaintiff that its claim was denied because Alpina Investments "had not provided . . . Timber Creek with information necessary to confirm that it was holding the [$1 million in escrow] in its custody," and because Alpina Investments had

3

notified Timber Creek by email dated March 7, 2024,[2] that it was "facing a force majeure situation which triggered [a] non-performance exclusion" in the insurance policy. *Id.* at ¶ 36(n). Timber Creek then "represented to state insurance investigators that benefits were not payable to Plaintiff" because Alpina Investments "had cancelled" the insurance policy. *Id.* at ¶ 44.

The Amended Complaint asserts RICO, RICO conspiracy, unjust enrichment, and fraud claims against the Insurance Defendants as well as breach of contract and breach of the covenant of good faith and fair dealing under the insurance policy against Timber Creek. Am. Compl. ¶¶ 46–69, 77–110.

## II.   LEGAL STANDARD

Under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, a "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA, therefore "reflects a legislative recognition of the desirability of arbitration as an alternative to the complications of litigation." *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (quoting *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987), *abrogated on other grounds as recognized by Rodriguez-Depena v. Parts Auth., Inc.*, 877 F.3d 122 (2d Cir. 2017)). The FAA "[b]y its terms . . . leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). "When a district court finds that a lawsuit involves an

---

[2] The Amended Complaint appears to give conflicting dates for this email. *See* Am. Compl. ¶ 42 (alleging that Alpina Investments "falsely stated in a May 7, 2024 email to Timber Creek that Alpina [Investments] was currently facing a force majeure situation").

4

arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

"In deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). In addition, district courts are required to "compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in separate forums." *Dean Witter Reynolds, Inc.*, 470 U.S. at 217.

For motions to compel, "courts apply a 'standard similar to that applicable for a motion for summary judgment.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). This standard "requires a court to consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits." *Id.* (cleaned up). It is "appropriate" to use this standard in cases where a court is required "to determine arbitrability." *Id.* at 230 (quoting *Bensadoun*, 316 F.3d at 175).

## III.  DISCUSSION

In deciding whether to compel arbitration, courts "ordinarily answer four questions." *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 221 (2d Cir. 2019). First, "whether the parties agreed to arbitrate," second "the 'scope' of the arbitration agreement," third, "whether the plaintiff's federal statutory claims are 'nonarbitrable,'" and fourth "if some, but not all of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration." *Id.* at 221–22 (citation omitted).

### A.     Existence of the Agreement to Arbitrate

The Insurance Defendants argue that the insurance policy[3] is "at the heart of Plaintiff's claims" against them, and the policy contains an arbitration agreement that would apply to Plaintiff as a third-party beneficiary seeking the benefit of the insurance policy. Defendants' Memorandum of Law (Def. Mem.) at 23–24, Dkt. No. 37-1. Plaintiff responds that if it did agree to arbitrate, the agreement "would only apply to Timber Creek," as a party to the insurance policy and not the other two Insurance Defendants. Plaintiff's Memorandum of Law (Pl. Mem.) at 23, Dkt. No. 44.

"Whether the parties have agreed to arbitrate is generally a question of state contract law." *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 702 (2d Cir. 2023). The "party seeking . . . arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made." *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d Cir. 2022) (quoting *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010)). "But this burden does not require the moving party to show initially that the agreement would be enforceable, merely that one existed." *Id.* (cleaned up); *see e.g., Scone Invs., L.P. v. Am. Third Mkt. Corp.*, 992 F. Supp. 378, 381 (S.D.N.Y. 1998) (holding that the prima facie requirement was satisfied by production of signed writing).

After the party seeking to compel arbitration makes a prima facie initial showing that an agreement to arbitrate existed, "the burden shifts to the party opposing arbitration to put the making of that agreement 'in issue.'" *Hines*, 380 F. App'x at 24 (citation omitted). The non-moving party then has the burden of countering "with at least '*some evidence* to substantiate [its] denial' that an agreement had been made." *Barrows*, 36 F.4th at 50 (quoting *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 462 F.2d 673, 676 (2d Cir. 1972)).

---

[3] The insurance policy is attached to the Amended Complaint and properly considered on the pending motion. *Nicosia*, 834 F.3d at 229.

6

Under the doctrine of "direct benefits estoppel," New York law allows nonsignatories to an arbitration agreement to be bound where the "nonsignatory knowingly exploits the benefits of an agreement containing an arbitration clause, and receives benefits flowing directly from the agreement." *Belzberg v. Verus Invs. Holdings Inc.*, 21 N.Y.3d 626, 631 (2013) (citation omitted). The "guiding principle" of direct benefits estoppel is "whether the benefit gained by the nonsignatory is one that can be traced directly to the agreement containing the arbitration clause." *Id.* at 633. The nonsignatory directly benefits from the agreement when they "invoke the contract to obtain its benefit, or the contract must expressly provide the beneficiary with a benefit." *Trina Solar US, Inc. v. Jasmin Solar Pty Ltd*, 954 F.3d 567, 572 (2d Cir. 2020); *see Upstate Shredding, LLC v. Carloss Well Supply Co.*, 84 F. Supp. 2d 357, 363–64 (N.D.N.Y. 2000) (noting that "plaintiffs cannot have it both ways" by "rely[ing] on the contract, when it works to their advantage, and repudiat[ing] it when it works to their disadvantage") (citation omitted).

Agreements to arbitrate protect "employees or disclosed agents of an entity that is a party to an arbitration agreement." *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993) (citations omitted). "If it were otherwise, it would be too easy to circumvent the agreements by naming individuals as defendants." *Id.*

Here, Plaintiff attached to the Amended Complaint the subject insurance policy naming Plaintiff as a third-party beneficiary and containing the arbitration clause. Both Neyland and Kirkland are protected by the arbitration clause because Neyland was Timber Creek's employee and signatory to the insurance policy, while Kirkland was Timber Creek's "liaison" and therefore an agent for Timber Creek. *See* Am. Compl. ¶ 36(h). In addition, the direct benefits estoppel doctrine applies because Plaintiff invoked the insurance policy to obtain its benefit when it made a claim under it, *id.* at ¶ 36(l), and when it brought a breach of contract claim seeking to enforce

7

it, *id.* at ¶ 77–84.  Timber Creek has therefore established the existence of an agreement to arbitrate that binds Plaintiff under the direct-benefits theory of estoppel, and the burden shifts to Plaintiff "to put the making of that agreement in issue." *Hines*, 380 F. App'x at 24 (citation omitted).

Plaintiff makes just one statement on this issue—that the arbitration provision in the insurance policy "would only apply to Timber Creek . . . and not to Neyland or Kirkland"—and does not offer any support of its position such as affidavits or other documentary evidence that would raise an issue of fact regarding the relationship among Neyland, Kirkland, and Timber Creek or regarding whether there is an agreement to arbitrate.  Pl. Mem. at 23.  As a result, Plaintiff has not met its burden of "countering with a least *some evidence*" that the agreement to arbitrate does not exist as to any of the Insurance Defendants.  *Barrows*, 36 F.4th at 50 (citation omitted). Accordingly, an agreement to arbitrate exists for each of the Insurance Defendants.

> **B.     Scope of the Agreement to Arbitrate and Arbitrability of Federal Statutory Claims**

The Insurance Defendants argue that all of Plaintiff's claims against them fall within the scope of the arbitration agreement because it covers "any dispute arising out of or relation to the interpretation, performance or breach" of the insurance policy.  Def. Mem. at 23.  Plaintiff responds that the arbitration clause "very clearly does not provide that disputes arising or relating to the [Insurance] Defendants' tortious and criminal acts must be arbitrated."  Pl. Mem. at 23.

"[A]ny doubts" about the scope of arbitration agreements are "normally resolve[d] . . . 'in favor of arbitration.'" *Abdullayeva*, 928 F.3d at 222 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).  "This presumption in favor of arbitrability comes" directly from the FAA.  *Id.*  As such, arbitration agreements are to be "construe[d] . . . as broadly as possible," and "language excluding certain disputes from arbitration must be clear and unambiguous . . . arbitration should be ordered unless it may be said with positive assurance that

8

the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Genesco, Inc.*, 815 F.2d at 847 (citation omitted). "In determining whether a particular claim falls within the scope" of an agreement to arbitrate, courts "focus on the factual allegations in the complaint rather than the legal causes of action asserted." *Id.* at 844. "If the allegations underlying the claims touch matters covered by" the arbitration agreement "then those claims must be arbitrated, whatever the legal labels attached to them." *Id.* (citation omitted).

Here, Plaintiff's claims against the Insurance Defendants revolve around the failure of the Insurance Defendants to make Plaintiff whole for the loss of their escrow money. *See* Am. Compl. at ¶¶ 36(e, h–p), 41–45. Given that the arbitration agreement covers "any dispute arising out of or relating to the interpretation, performance or breach of" the insurance policy, it cannot be said "with positive assurance" that it does not extend to Plaintiff's claims. *See Genesco, Inc.*, 815 F.2d at 847 (citation omitted). In addition, Plaintiff cannot reasonably dispute that the majority of its claims against Timber Creek flow directly from an alleged breach of the insurance policy. *See* Am. Compl. at ¶¶ 77–92, 105–10. As for Plaintiff's argument that the Insurance Defendants engaged in tortious or criminal actions, it is well established that Plaintiff's RICO claims are arbitrable. *See Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 242 (1987) (RICO claims may be "effectively vindicate[d] . . . in an arbitral forum"); *Kumaran v. Vision Financial Markets LLC*, 2022 WL 17540669, at *4 n.2 (S.D.N.Y. Dec. 6, 2022) (noting that "[t]here is no longer any doubt that a RICO claim is arbitrable") (quoting *Kerr-McGee Ref. Corp. v. M/T Triumph*, 924 F.2d 467, 469 (2d Cir. 1991)). Plaintiff's claims are therefore within the scope of the arbitration agreement.

### C. Stay

Plaintiff's claims against the Insurance Defendants are within the scope of the arbitration agreement, and the FAA therefore requires this Court to stay further litigation of those claims pending arbitration. 9 U.S.C. § 3. As a result, this action is stayed as against the Insurance

Defendants. *Smith*, 601 U.S. at 478 ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.").

Here, there are Defendants other than the Insurance Defendants, and the Court will also consider whether to stay all proceedings in this case. Those other Defendants are Alpina Investments; Mohan Toramall,[4] who was the "Head of Operations – Board Liaison Manager– Director of NY" for Alpina Investments; John J. McManus and his law firm John J. McManus & Associates (McManus Defendants), who allegedly managed the escrow account; and Seth Eschen, who allegedly wired the escrow money overseas (collective the Other Defendants). Am. Compl. ¶¶ 4, 18, 20, 22, 35. Plaintiff asserts RICO, RICO conspiracy, unjust enrichment, and fraud claims against the Other Defendants. *Id.* at ¶¶ 46–69, 85–104. Plaintiff also asserts two additional claims against Alpina Investments: breach of contract claims related to the funding agreement and an intentional interference with contract claim related to the insurance policy. *Id.* at ¶¶ 70–76, 105–116. Finally, the McManus Defendants have filed cross-claims against all Defendants for indemnification of any liability. Dkt. No. 35 at 18–19.

"The decision to stay the balance of the proceedings pending arbitration is a matter largely within the district court's discretion to control its docket." *Genesco, Inc.*, 815 F.2d at 856 (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 20 n.23 (1983)). "Broad stay orders are particularly appropriate if the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit." *Id.* In deciding whether to stay other claims in a case, courts "must consider factors such as the desirability of avoiding piecemeal litigation and the degree to which the cases

---

[4] Alpina Investments and Toramall have not appeared; defaults have been entered against them, Dkt. Nos. 46, 50; and Plaintiff has moved for default judgment. Dkt. Nos. 52, 56.

10

necessitate duplication of discovery or issue resolution." *Plump Eng'g, Inc. v. Westshore Design Eng'rs, P.C.*, No. 18-cv-27 (BKS/DJS), 2018 WL 3730168, at *7 (N.D.N.Y. Aug. 6, 2018) (quoting *Maritima de Ecologia, S.A. de C.V. v. Sealion Shipping Ltd.*, No. 10-cv-8134, 2011 WL 1465744, at *5 (S.D.N.Y. Apr. 15, 2011). "A discretionary stay is particularly appropriate" when "there is significant factual overlap between the remaining claims and the arbitrated claims . . . because the prior litigation or arbitration is likely to have preclusive effect over some or all of the claims not subject to arbitration." *Id.* (quoting *Winter Invs., LLC v. Panzer*, No. 14-cv-6852, 2015 WL 5052563, at *11 (S.D.N.Y. Aug. 27, 2015)); *see CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 77 (2d Cir. 2017) (noting that it "is settled law that the doctrine of issue preclusion is applicable to issues resolved by an earlier arbitration").

Here, the claims against the Other Defendants include RICO claims. The RICO claims against the Insurance Defendants are arbitrable, and an arbitration decision may include factual findings about whether RICO predicates exist. As for the claims against Alpina Investments, the arbitration decision will address whether the Insurance Defendants breached the insurance policy and that could affect Plaintiff's intentional interference claim. Similarly, even though Plaintiff's breach of contract claim against Alpina Investments relies on the funding agreement, the arbitration decision may address whether Alpina Investments faced a force majeure. Given the significant factual overlap between the arbitrable claims and the other claims and crossclaims, all proceedings in this action are stayed pending the outcome of arbitration.[5]

IV.  **CONCLUSION**

---

[5] Because the FAA requires district courts to "direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed," *Daly*, 939 F.3d at 421, the arguments supporting the Insurance Defendants' motion to dismiss Plaintiff's claims are not addressed and that portion of the motion is denied without prejudice to raise the same arguments in arbitration.

For these reasons, it is hereby

**ORDERED** that the Insurance Defendants' motion to dismiss Plaintiff's Amended Complaint or, in the alternative, compel arbitration, Dkt. No. 37, is **DENIED IN PART** and **GRANTED IN PART**; and it is further

**ORDERED** that the Insurance Defendants' motion to compel arbitration is **GRANTED**; and it is further

**ORDERED** that this proceeding is **STAYED** pending the completion of arbitration; and it is further

**ORDERED** that Defendants' motion to dismiss is **DENIED**; and it is further

**ORDERED** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 29, 2025

Elizabeth C. Coombe
U.S. District Judge